*Cohen Kennedy Dowd & Quigley, P.C.*
*The Camelback Esplanade I*
*2425 East Camelback Road • Suite 1100*
*Phoenix, Arizona 85016*
*Telephone 602•252•8400  Facsimile 602•252•5339*

Daniel P. Quigley (009809) Email: dquigley@ckdqlaw.com
Maureen M. Manning (028877) Email: mmanning@ckdqlaw.com
 *Attorneys for Venus Medical, Inc. and Michael A. Howe, III*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| VENUS MEDICAL, INC. and MICHAEL A. HOWE, III,<br><br>        Petitioners,<br><br>v.<br><br>DAVID G. ROBERTS and DAVID G. ROBERTS & ASSOCIATES,<br><br>        Respondents. | Misc. Action No.:  _____<br><br>USDC, Northern District of Georgia<br>Case No. 1:12-cv-4425-MHC<br><br>**VENUS MEDICAL, INC. AND MICHAEL A. HOWE, III'S MOTION FOR CONTEMPT FOR FAILURE TO COMPLY WITH SUBPOENAS** |

Petitioners Venus Medical, Inc. ("Venus") and Michael A. Howe, III (collectively, "Petitioners") respectfully move the Court to hold David G. Roberts and his company David G. Roberts & Associates (collectively, "Respondents") in contempt for failure to comply with subpoenas issued and served on them in connection with *Venus Medical, Inc. v. Skin Cancer & Dermatology Center, P.C.*, No. 1:12-cv-4425-MHC (the "Subpoenas"), a civil action pending in the United States District Court for the Northern District of Georgia, Atlanta Division (the "Georgia Litigation").

**BRIEF DESCRIPTION OF THE GEORGIA LITIGATION**

The Georgia Litigation involves competing claims for breach of contract.  In 2010, Venus entered into a Consulting Agreement with Skin Cancer & Dermatology Center, P.C.,

a Georgia corporation and Skin Cancer & Dermatology Center, P.C., a Tennessee corporation (collectively, the "Practices"). After two-and-a-half years of performing under that contract, the Practices failed to pay Venus the monthly consulting fee that was due on the first of December 2012, and further failed to cure the untimely payment within the time allowed by the parties' contract.  As a result, Venus exercised its contractual right to terminate the agreement.  Following termination, the Practices claimed to examine, for the first time, Venus' performance over the preceding two-and-a-half years.  The results of that examination allegedly revealed that Venus' performance was deficient, and the Practices thereafter attempted to rescind the contract based on their allegations of total non-performance by Venus of its consulting duties.  Venus initiated the Georgia Litigation in December 2012.

Mr. Roberts is not a party to the Georgia Litigation.  He was, however, the President of the Practices from mid-2012 until the spring of 2015, when he became Vice President.  In addition, he has been an employee of the Practices since January 2010 and a contracted consultant to the Practices since October 2010.  Prior to that time, he was a part-owner of the Practices.

After a series of preliminary motions, discovery began in October 2014.  At that time, Petitioners did not know that Mr. Roberts maintained his positions as a highly-compensated employee, a contracted consultant, and the President of the Practices.  Petitioners therefore issued the Subpoenas to Mr. Roberts and his company, seeking evidence relevant to the Georgia Litigation.  As discovery has progressed, it has become increasingly clear that Mr. Roberts is a pivotal witness and document custodian with respect to the Georgia Litigation.

## BACKGROUND RELEVANT TO MOTION

1.    On November 3, 2014, Petitioners (as Plaintiffs in the underlying litigation) issued the Subpoenas to Respondents (*see* Subpoenas attached as Ex. A), and on November 16, 2014, Respondents acknowledged service of those Subpoenas (*see* Acknowledgment of Service, attached as Ex. B.)

. . .

2

*Cohen Kennedy Dowd & Quigley*

2.      Among other documents, the Subpoenas requested production of:

a.      All business, practice management or financial reports, recommendations or analyses you have prepared or provided to Dr. Chung[1] and/or the Practices between April 2010 and the present.

b.      All analyses, mark-ups, drafts, memoranda, communications or other documents that evidence, refer or relate to negotiation of the 2010 Restructured Agreement.[2]

(Subpoena Item Nos. 4 & 5.)

3.      Respondents did not move to quash or modify the Subpoenas, did not seek relief from the Subpoenas in any way, and did not assert any objections to any of the itemized topics or to the Subpoenas' terms.

4.      On December 1, 2014, Respondents produced 118 documents in response to the Subpoenas.

5.      Mr. Roberts was deposed in connection with the Georgia Litigation on June 30, 2015.  (Excerpts from Mr. Roberts' deposition are attached as Ex. C (hereinafter, "Roberts Dep.").)

6.      During his deposition, Mr. Roberts was shown two competing versions of a memorandum dated February 24, 2010, allegedly prepared by his wife, Gloria Roberts, which related to the negotiation of the 2010 Restructured Agreement.  (Roberts Dep. at 88-97; 102-111.)  One version of the memorandum had been given to Mr. Howe contemporaneously with its creation in February 2010, and it was produced in discovery by Petitioners.  The other version (never previously provided to Petitioners) had been produced in discovery by . . .

[1]      Dr. John Chung is a dermatologist in Dalton, Georgia.  He is the sole owner of the Practices and is named as a defendant in the Georgia Litigation in connection with his personal guaranty of the Practices' obligations under the Consulting Agreement.

[2]      The "2010 Restructured Agreement" was defined to include six contracts, including the Consulting Agreement and a Stock Purchase Agreement, which were executed as part of a single transaction on April 25, 2010.

the Practices.  The second version contained alterations that provided support, where none existed before, for specific allegations made in the Practices' counterclaim.

7.     Mr. Roberts never produced either version of the memorandum in response to the Subpoenas issued to him and his company.  When asked at his deposition why, he said that he did not produce the memorandum because "[his] wife did it" and, later, "[i]t was in my wife's filing cabinet and my wife did not recall."  (*Id.* at 95 & 101-02.)

8.     Due to the unexplained origin of the two competing versions, Petitioners issued a Notice of Inspection for the laptop computers of Mr. Roberts and his wife. (Notice of Inspection, attached as Ex. D.)  Mr. and Mrs. Roberts thereafter retained independent legal counsel to represent them in connection with the inspection.  Although Mr. Roberts initially indicated he would cooperate with the inspection, his attorney notified Petitioners' counsel two business days before the scheduled inspection that Mr. Roberts was not prepared to comply with the inspection and that it needed to be postponed because Mr. and Mrs. Roberts had not yet been able to retain an independent forensic examiner to observe the inspection.  (Email from J. Lorona to R. Rothman, July 30, 2015, attached as Ex. E.)  *The following day*, in a telephonic hearing in the Georgia Litigation, Mr. Roberts' attorney disclosed that his clients' two laptop computers had already been delivered to an independent forensic examiner retained by Mr. Roberts.

9.     To expedite the process, Petitioners' counsel consented to Mr. Roberts' examiner conducting the examination so long as he complied with the terms of the Notice of Inspection and the prior stipulations agreed to among counsel.

10.     The forensic examination conducted by Mr. Roberts' examiner revealed multiple other versions of the memorandum, but his initial examination was incomplete and he agreed to supplement his report.  That supplemental report, along with belated disclosures from defense counsel in the Georgia Litigation, showed that Mr. Roberts was the email sender or email recipient of multiple versions of the memorandum.  (*See* Emails attached as Ex. F.)  He also wrote in one email that he was placing the document in *his* . . .

4

1  "correspondence file." (*See id.* at May 10, 2013.)  Yet, *Mr. Roberts never produced any of those*

2  *emails or any versions of the memorandum* in response to Petitioners' subsequent Subpoenas.

3       11.    The forensic examination revealed that the memorandum had been revised on

4  Mrs. Roberts' computer on at least two occasions in May 2013, approximately six months

5  after the Georgia Litigation was filed.  (*See* Revised Forensic Report at 12, attached as

6  Exhibit G (showing that original document created on February 24, 2010 was last revised on

7  May 12, 2013 and that another version was also created and revised on May 13, 2013).)  A

8  May 12, 2013 email from Mrs. Roberts states that she had "added" some things to the three-

9  year old memorandum based on hand-written notes she retained from the meeting that is

10  the subject of the memorandum. (Exhibit F at 7.)

11       12.    Notably, the Respondents' forensic examination was limited to searching only

12  for the memorandum at issue and emails to which that document was attached.  Moreover,

13  the examiner did not search for documents discussing the memorandum, as requested by

14  Petitioners.

15       13.    Petitioners have discovered other deficiencies in the Respondents' document

16  production.  During his deposition, Mr. Roberts revealed that he had not produced a

17  financial document, called a "monitor," that he routinely prepared for Dr. Chung and the

18  Practices, nor did he produce any of the underlying financial documents on which that

19  "monitor" was based.  (Roberts Dep. at 206.)  In fact, Mr. Roberts produced no financial

20  documents of any kind in response to Subpoena Item Nos. 7 and 8.  The only "financial"

21  information he produced were reports related to his own compensation from the Practices,

22  which were responsive to Subpoena Item No. 2.

23       14.    When Mr. Roberts finally produced the "monitor" (approximately eight

24  months after he originally responded to the Subpoena), he produced a single sheet of paper,

25  which had been modified and updated by Mr. Roberts during the course of the lawsuit.

26  Indeed, notwithstanding service of the Subpoena, Mr. Roberts apparently continued his

27  . . .

28  . . .

*Cohen Kennedy Dowd & Quigley*

1  practice of "writing over" the monitor, without preserving the earlier version, each time he

2  updated Dr. Chung.

3      15.    There may be additional documents missing from the Respondents'

4  production. Respondents produced anywhere from zero documents to less than five

5  documents in response to Subpoena Item Nos. 1, 6, 7, 8, 9, 10, 11, and 12.

6      16.    Based on the failures described above, a complete forensic search is warranted

7  and necessary to ensure compliance with the Subpoenas.

8      17.    Petitioners' counsel has endeavored to have the deficiencies in Respondents'

9  productions cured absent court intervention, but to no avail.  Frustratingly, defense counsel

10  in the Georgia Litigation points to Mr. Roberts' personal attorney, and Mr. Roberts' personal

11  attorney points to defense counsel.

12                    **ARGUMENT AND CITATION OF AUTHORITY**

13      Rule 45(g) of the Federal Rules of Civil Procedure authorize a court to hold a non-

14  party in contempt of court where the party has been properly served with a subpoena but

15  has failed, without adequate excuse, to comply with the terms of the subpoena.  FED. R. CIV.

16  P. 45(g); *Martha's Vineyard Scuba Headquarters, Inc. v. Wrecked & Aban*, 280 F.R.D. 76, 77 (D.

17  Mass. 2011).

18      1.    *Exceptional Circumstances Justify Transfer of this Motion.*

19      Before turning to the merits of this Motion, however, Petitioners request that the

20  Court transfer this Motion to the Issuing Court—*i.e.,* the United States District Court for the

21  Northern District of Georgia.   A transfer to the Issuing Court is appropriate if (i)

22  Respondents consent, or (ii) this Court finds that exceptional circumstances exist justifying

23  the transfer.  FED. R. CIV. P. 45(f).  The Advisory Committee notes to Rule 45(f) explain that

24  "transfer may be warranted in order to avoid disrupting the issuing court's management of

25  the underlying litigation…." *See also In re UBS Financial Services, Inc.,* --- F. Supp. 3d ----, 2015

26  WL 4148857, at *1 (D.D.C. July 9, 2015) ("Among other elements, courts determining

27  whether 'exceptional circumstances' exist to warrant transfer have considered '[case]

28  . . .

6

1   complexity, procedural posture, duration of pendency, and the nature of the issues pending

2   before or already resolved by, the issuing court in the underlying litigation. [Cits.].")

3         Abundant grounds exist for this Court to find "exceptional circumstances" to

4   transfer this Motion, most notable among them being that this Motion raises some of the

5   same issues that are already pending before the Issuing Court.  Specifically, on August 17,

6   2015, Petitioners moved for an award of discovery sanctions against the defendants in the

7   Georgia Litigation, in part based on Mr. Roberts' discovery failures outlined above.  That

8   motion is now fully briefed.  As noted above, while Mr. Roberts is not a named defendant in

9   that case, he is a generously-compensated senior executive officer of and consultant to the

10  Practices.  Indeed, the Practices designated him as a "custodian" of potentially relevant

11  information in the Georgia Litigation.  But despite all of this, the Practices have thus far

12  refused to acknowledge that documents possessed by Mr. Roberts are within their "control,"

13  as contemplated by Rule 34.  Accordingly, Petitioners have been left with no other choice

14  but to file the instant Motion to avoid the possibility of being left without recourse for the

15  Respondents' disregard of their discovery obligations.

16        As the Advisory Committee notes make plain, Rule 45 favors local resolution of

17  subpoenas to avoid imposing unreasonable burdens on nonparties.  But even setting aside

18  that the Respondents' intimate relationship with the Practices in the Georgia Litigation

19  distinguish them from the typical "nonparties" contemplated by Rule 45, a transfer here

20  would impose little, if any, additional burden on the Respondents.  Because of his role with

21  the Practices, Mr. Roberts routinely visits the Practices, which are located within the Issuing

22  Court's district.  Mr. Roberts also has been hard at work on the Practices' behalf in the

23  Georgia Litigation.  For example, Mr. Roberts elected to travel to the Issuing Court's district

24  multiple times in the past few months to observe various depositions taken in the Georgia

25  Litigation.  Most recently, on September 24, 2015, the Practices submitted an affidavit from

26  Mr. Roberts in opposition to the Petitioners' motion for partial summary judgment.

27  . . .

28  . . .

*Cohen Kennedy Dowd & Quigley*

Accordingly, because of the judicial efficiency that it would promote and the minimal, if any, burden it would impose on the Respondents,[3] the Petitioners respectfully request that this Court find that exceptional circumstances justify transfer of this Motion to the Issuing Court.

2.    *Mr. Roberts Failed to Produce All Documents Requested in the Subpoenas.*

As to the merits of this Motion, Mr. Roberts' deposition testimony and the subsequent discovery efforts by Petitioners' counsel in the Georgia Litigation have established that Respondents did not comply with the Subpoenas served upon them, and that their excuse for failing to comply was neither adequate nor accurate.  Respondents were also relying on an erroneous and unreasonable lay opinion regarding what documents were in their possession, custody, or control.  Because of those failures, Petitioners have substantial reason to doubt the adequacy and reasonableness of Respondents' search for and production of documents in response to the Subpoenas.

As noted above, Respondents failed to produce a number of documents in response to the Subpoenas.  Specifically, they failed to produce the financial monitor that Mr. Roberts periodically prepared for Dr. Chung and the Practices, which would have been responsive to Subpoena Item No. 4, and did not produce any similar, related, or underlying documents pertaining to those monitors or any other financial reports prepared for the Practices.  Respondents also failed to produce a copy of any version of the February 24, 2010 memorandum (or any related documents or emails), which would have been responsive to Subpoena Item No. 5.  Respondents have no adequate excuse for these failures and should be held in contempt.

Finally, Respondents produced between zero and less than five documents in response to eight of twelve requested categories of documents.  While it is possible that this

.  .  .

_____

[3]    Nor would the transfer require a change in counsel, since pursuant to Rule 45(f), upon transfer, "if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court."

1   meager production is because the documents do not exist, the known failures, discussed

2   above, strongly suggest an overall lack of the required diligence from the Respondents in

3   meeting their discovery obligations.

4          3.    *Mr. Roberts Has Control and an Obligation to Produce Documents in His Wife's*

5               *Possession.*

6         Respondents also failed to produce documents responsive to the Subpoenas based on

7   Mr. Roberts' legally insufficient contention that he had no obligation to produce them

8   because his wife typed them and kept them in her filing cabinet.

9         Like discovery among parties, the mandate of Rule 45(a)(iii) is not limited to the

10   production of documents within the physical possession of a subpoenaed party.  It also

11   requires the production of documents that are within that party's *control*.  FED. R. CIV. P.

12   45(a)(iii).  "Control" is applied broadly, and it includes the legal right to obtain documents as

13   well as the "practical ability" to obtain them.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.,*

14   236 F.R.D. 177, 180 (S.D.N.Y. 2006) (*citing Riddell Sports, Inc. v. Brooks*, 158 F.R.D. 555, 558

15   (S.D.N.Y. 1994)).

16         Mr. Roberts and his wife are married.  They live together.  They work together.  The

17   documents at issue relate to Mr. Roberts' work for Dr. Chung and the Practices.  And, both

18   Mr. and Mrs. Roberts have attempted to aid defense counsel in the Georgia Litigation by

19   providing documents and other information. *See United States v. Freidus*, 1989 U.S. Dist.

20   LEXIS 13454, at *5-6 (S.D.N.Y. Nov. 10, 1989).  Thus, Mrs. Roberts' possession of and

21   involvement with these documents is in no way wholly independent of her husband's

22   interests in the underlying litigation.  There is simply no basis for concluding that Mr.

23   Roberts does not have sufficient "control" of the documents his wife wrote, typed, or kept

24   in her filing cabinet.

25         Mr. Roberts undoubtedly had the practical ability to obtain documents in his wife's

26   possession, whether they were from her email account or stored in her filing cabinet in their

27   home. *See generally Andrews v. Holloway*, 256 F.R.D. 136, 151 & n.13 (D.N.J. 2009) (holding

28   that defendant had obligation to produce documents that he had a right to access, including

documents in the possession of his family).  If the rule were otherwise, every subpoenaed party or litigant could avoid all discovery efforts simply by handing relevant documents over to their spouse.  *Freidus*, 1989 U.S. Dist. LEXIS 13454, at *5-6 (holding that husband had control over documents in his wife's possession that were maintained in the marital residence); *see also Bough v. Lee*, 29 F. Supp. 498, 501 (S.D.N.Y. 1939) ("Control, not mere possession, is the determining factor. Otherwise a person subpoenaed to produce documents or records could engage in a game of hide and seek, thus frustrating the orders of the Court" (internal citation omitted)).  The Federal Rules of Civil Procedure do not tolerate these types of shell games.

By failing to produce the documents in Mrs. Roberts' possession, Respondents failed to obey the Subpoenas and should be held in contempt.

4.      *Mr. Roberts Has Actual Possession of a Number of Responsive Documents Never Produced.*

Even if one were to credit Respondents' excuse for failing to produce the single version of the memorandum that was supposedly kept in Mrs. Roberts' filing cabinet, Petitioners' counsel's investigation has revealed that Respondents' justification was not even true.  It is undisputed that Mr. Roberts had actual physical possession of multiple other versions of the memorandum as well as emails transmitting or discussing that memorandum.  (*See* Emails attached as Ex. F.[4])  Mr. Roberts produced none of these emails and no copies of the memorandum he claimed to have placed in *his* correspondence file.  Given the limited nature of the forensic examination, it is possible, if not likely, that Mr. Roberts has even more documents that have yet to be produced.  Respondents and their attorney, however,

. . .

. . .

. . .

. . .

_____

[4]      The following email accounts are associated with Mr. Roberts: mdplanning@cox.net, mdplanning@shaw.ca, mdplanning@cox.net, and gwki@cox.net.

10

1   have refused to supplement Respondents' production.[5]   Respondents have no adequate

2   excuse for failing to produce these documents.

3       All of these documents—the emails and the various versions of the memorandum

4   attached to them—were in Respondents' actual possession when they responded to the

5   Subpoenas.  The failure to produce them was without excuse, and Respondents should be

6   held in contempt for disobeying the Subpoenas.

7       5.   *Respondents' Failures and Omissions Justify an Order Demanding that Respondents Make*
8            *a Reasonable and Thorough Search for Other Documents Not Previously Produced.*

9       In light of the undisputed failures and omissions outlined above as well as

10  Respondents' narrow and mistaken view of what documents are in their "possession,

11  custody, or control," Petitioners have substantial reason to doubt the adequacy of

12  Respondents' entire production in response to the Subpoenas.  Respondents are now

13  refusing to address these noted deficiencies or conduct a further search for responsive

14  material.

15                        **RELIEF REQUESTED**

16  Petitioners respectfully request the following relief:

17      (1)   That this Court issue an Order transferring this Motion to the Issuing Court;

18  or, in the alternative:

19      (2)   That Respondents be held in contempt for failure to comply with the

20  Subpoenas served upon them;

21      (3)   That Respondents be ordered to fully cooperate with the Petitioners to make a

22  reasonable, thorough, and complete supplemental production in response to the Subpoenas.

23  Specifically, with respect to the production of electronically stored information, Petitioners

24  request that an appropriately credentialed forensic examiner with an electronic discovery

25  ───────────────

26  [5]      At one point, Mr. Roberts' attorney requested copies of the Subpoenas and said that
    he would be working to supplement the earlier productions because defense counsel in the
27  Georgia Litigation told him he suspected that the initial responses—spearheaded by Mr.
28  Roberts—had not been fulsome.

11

*Cohen Kennedy Dowd & Quigley*

company conduct the search based upon reasonable, negotiated search terms and search parameters at the Respondents' expense.   With respect to the production of paper documents, Petitioners request that Respondents' counsel personally handle the search for and review of the potentially responsive documents;

(4)     That Respondents be charged with the costs and fees incurred by Petitioners in having to bring this Motion; and

(5)     That the Court grant such other relief as is proper.


Respectfully submitted this 2nd day of October, 2015.


**Cohen Kennedy Dowd & Quigley, P.C.**
The Camelback Esplanade I
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
    Attorneys for Petitioners

By:    _/s/ Daniel P. Quigley_
        Daniel P. Quigley
        Maureen M. Manning

*Cohen Kennedy Dowd & Quigley*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2015, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and caused a true and correct copy of the same to be mailed on October 2, 2015 via U.S. Mail to the following:

Jess A. Lorona
Lorona | Mead, PLC
3838 N. Central Ave., Suite 100
Phoenix, AZ 85012
   Attorney for David G. Roberts and David G. Roberts & Associates


Robert L. Rothman
Jennifer L. Shelfer
Scott A. Wandstrat
Arnall Golden Gregory LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363
   Attorneys for Venus Medical, Inc. and Michael A. Howe, III in
   Georgia Litigation


Michael A. Dailey
Stephen J. Anderson
Anderson Dailey, LLP
2002 Summit Boulevard, Suite 1250
Atlanta, GA 30319
   Attorneys for Skin Cancer & Cosmetic Dermatology Center, P.C.,
   Skin Cancer & Cosmetic Dermatology Center, P.C.,  John Y. Chung,
   and Linda Chung in Georgia Litigation


 /s/ Rachael McDanel