**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Venus Medical Incorporated,<br><br>               Plaintiff,<br><br>v.<br><br>Skin Cancer & Cosmetic Dermatology Center PC, et al.,<br><br>               Defendants. | No. 15-00062MC<br><br>**ORDER** |

Before the Court is Petitioners Venus Medical Inc. and Michael Howe's Motion for Contempt for Failure to Comply with Subpoenas. (Doc. 1.) The motion relates to two subpoenas for production of documents issued from the Northern District of Georgia to nonparties David G. Roberts, an Arizona resident, and David G. Roberts & Associates, Inc., an Arizona corporation. (Doc. 1-1).[1] The motion is fully briefed, and neither party requested oral argument. For the reasons stated below, the motion is transferred to the Northern District of Georgia.

## **BACKGROUND**

The following facts are undisputed unless otherwise noted. On November 3, 2014, the Northern District of Georgia issued two subpoenas on behalf of Venus to David

---

[1] Also pending before the Court is Roberts and David G. Roberts & Associates, Inc.'s motion for leave to file two additional affidavits in connection with their response to Venus' motion for contempt. (Doc. 13.) The motion is fully briefed. Because Venus' motion is transferred, the motion is denied as moot.

G. Roberts and David G. Roberts & Associates, Inc. (collectively referred to as "Respondents").  The subpoenas relate to a breach of contract action before Judge Mark H. Cohen, *see Venus Medical, Inc. v. Skin Cancer & Dermatology Center, P.C.*, No. 1:12-cv-4425-MHC, to which Respondents are not parties.  Roberts, however, is an employee of the defendant in the underlying action.

The subpoenas directed Respondents to produce all "business, practice management or financial reports, recommendations or analyses you have prepared or provided to [the defendants] between April 2010 and the present."  (Doc. 1-1 at 28 (alterations added).)[2]  In addition, Respondents were to produce all "analyses, mark-ups, drafts, memoranda, communications or other documents that evidence, refer or relate to negotiation of the 2010 Restructured Agreement."  (*Id.*)  Respondents never challenged the subpoenas, and they ultimately produced 118 documents by December 1, 2014.

Nearly eight months later, on June 30, 2015, Roberts was deposed in connection with the underlying action.  (Doc. 1-3 at 2.)  At the deposition, it was discovered that Roberts did not disclose a February 24, 2010 memorandum created by his wife detailing meeting notes (the "meeting notes") of negotiations regarding the contract at issue.  Venus also discovered that multiple versions of the meeting notes existed, some with changes material to the issues in the underlying case.  When asked why he did not disclose the document, Roberts stated that he did not think the subpoena was directed at his wife and that it was in his wife's filing cabinet.  (*Id.* at 13-14.)

Venus also discovered that Roberts did not disclose a financial document referred to as a "monitor," which was prepared by Roberts for the defendant in the underlying action.  Roberts ultimately produced the monitor, but did not disclose the financial documents on which they were based.  Roberts claims the monitors were in the custody of another employee of the defendant and were disclosed to Venus by the defendant. (Doc. 8 at 11.)

---

[2] Citations to pages in the Court's docket are to the page numbers stamped at the top of the page by the Court's CM/ECF system, not the page numbers at the bottom of each page.

- 2 -

1    As a result of these alleged deficiencies, Venus issued a Request for Entry Upon
2 Land for Inspection for the computers of Roberts and his wife in order to conduct a
3 forensic computer search for all documents and correspondence related to the meeting
4 notes. (Doc. 1-4.) Roberts retained counsel and refused the inspection. He then sent his
5 computers to an independent forensic examiner, Brian Chase. Venus ultimately
6 consented to Chase performing the search of the computers.

7    The search revealed multiple versions of the meeting notes and disclosed that
8 Roberts had sent and received multiple versions of the meeting notes via email, some of
9 which were dated after the underlying action had commenced. (Doc. 1-6.) In an email
10 dated May 10, 2013, Roberts indicated that he placed the meeting notes in his own
11 correspondence file. (*Id.* at 5.)

12    After receiving the report, Venus discovered that the forensic examiner did not
13 conduct a broader search for documents that merely "discussed" the meeting notes. The
14 examiner allegedly only searched for the meeting notes themselves and any emails to
15 which they were attached. Venus also raises other alleged deficiencies in Roberts'
16 production under the subpoenas.

17    On October 2, 2015, Venus filed the instant motion requesting the Court to
18 transfer to motion to the Northern District of Georgia, or alternatively, to hold Roberts
19 and his company in contempt for failing to comply with the subpoenas and order a
20 complete forensic search of the computers.

21 **LEGAL STANDARD**

22    Subpoenas served on nonparties are governed by Fed. R. Civ. P. 45, which
23 requires that "a subpoena must be issued by the court where the underlying action is
24 pending, but challenges to the subpoena are to be heard by the district court
25 encompassing the place where compliance with the subpoena is required." *Woods ex rel.*
26 *United States v. SoutherCare, Inc.*, 303 F.R.D. 405, 406 (N.D. Ala. 2014). "When the
27 court where compliance is required did not issue the subpoena, it may transfer a motion
28 under this rule to the issuing court if the person subject to the subpoena consents or if the

court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The Advisory Committee note further explains the relevant considerations underlying the exceptional circumstances standard:

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45(f) advisory committee's note (2013). Ultimately, the court must balance the interest of local resolution against factors such as judicial economy and risk of inconsistent rulings. *See Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429-30 (N.D. Cal. 2014).

## ANALYSIS

**I. Transfer**

Respondents oppose Venus' efforts to transfer the motion to the Northern District of Georgia. Therefore, absent consent, Venus "bears the burden of showing that [exceptional] circumstances are present." Fed. R. Civ. P. 45(f) advisory committee notes (2013). Venus argues that the instant motion raises some of the same issues that are pending in a related motion filed before the Northern District of Georgia. That motion was filed in August 2015 and is now fully-briefed. It further argues that Roberts is intimately involved in the Georgia litigation and that transfer would impose little burden on him and his company. (Doc. 1 at 7.) Respondents argue exceptional circumstances do not justify transfer because Roberts lives in Arizona, the computers are located in Arizona, and there is no possibility of inconsistent rulings. (Doc. 8 at 23-24.) On balance, the Court finds the factors weigh in favor of transfer.

### A. Inconsistent Rulings

The "potential for inconsistent rulings should be avoided and weighs in favor of a single judicial officer deciding all of [the] disputes." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014). On August 17, 2015, Venus filed a Motion for Discovery Sanctions against Respondents in the Northern District of Georgia based on the same alleged failures to produce documents alleged in the instant motion. (Doc. 1 at 7.) The motion sets forth the same allegations raised in the instant motion, i.e., that Roberts failed to produce the meeting notes, that multiple versions of the meeting notes have been discovered with material alterations made after the litigation began, and that Roberts explained that he failed to produce the meeting notes because they were prepared by his wife. (Case No. 1:12-cv-04425-MHC (N.D. Ga.), Doc. 137-1 at 27-30.)

Although the motions request different relief, they require consideration of the same issues, which Respondents do not dispute. Venus' motion for discovery sanctions before Judge Cohen is fully briefed, but has not yet been decided. (Case No. 1:12-cv-04425-MHC (N.D. Ga.), Docs. 153, 173.) Because two motions involving substantially similar issues are pending before two different courts, the danger of inconsistent rulings is present. This factor militates heavily in favor of transfer. *See Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14.cv.0708-RFB-NJK, 2014 WL 4079555, at *7 (D. Nev. Aug. 15, 2014) (finding that because similar discovery issues in issuing district had been briefed, the danger of inconsistent rulings therefrom weighed in heavily in favor of transfer); *Valle del Sol, Inc. v. Kobach*, No. 14-mc-219-JAR, 2014 WL 3818490, at *4 (D. Kan. Aug. 4, 2014) (finding exceptional circumstances where similar issues arose in discovery in multiple districts thereby creating risk of inconsistent rulings).

### B. Judicial Economy

Judicial economy also weighs in favor of transfer. The underlying action is over three years old and involves discovery sought from several defendants. The Northern District of Georgia is more familiar with the issues remaining in the case, the history of discovery, the relevance of the documents sought by Venus in the instant motion, and

whether permitting an additional forensic search of the computers is necessary. It also has knowledge as to whether Venus has already obtained the same discovery from other defendants, as alleged by Respondents. (Doc. 8 at 12, 17.) In addition, similar issues have already been briefed and are ripe for review. Accordingly, this factor weighs in favor of transfer.

### C. Burden on Respondents

"The primary factor to consider in balancing [the factors] is any burden imposed on local non-parties by transferring the motions to the issuing court." *Zynga*, 2014 WL 4079555, at *7. Respondents do not argue, and the Court does not find, that transfer to the Northern District of Georgia will cause undue burden.

Roberts is an employee of one of the defendants in the underlying action and it is undisputed that he regularly travels to Georgia for work. In addition, although he is not a party, Roberts has been heavily involved in the litigation and is represented by Georgia attorneys. As such, the Court concludes Respondents would incur no prejudice as a result of transfer. This factor does not weigh against transfer. *See Moon Mountain Farms*, 301 F.R.D. at 430-31 (finding no burden where respondent argued increased cost of litigation and noting that the Advisory Committee "encourages judges" to allow telephonic communications to minimize travel costs).

### D. Conclusion

The Court concludes that transferring the motion to the Northern District of Georgia "promotes judicial economy, prevents inconsistent judicial decisions, and does not impose any meaningful burden on [Respondents]." *Zynga*, 2014 WL 4079555, at *8. Thus, exceptional circumstances exist for transfer of the motion.

## II. Contempt

Because the Court concludes that exceptional circumstances warrant transfer to the Northern District of Georgia, the Court need not address Venus' arguments relating to the merits of its motion for contempt.

## III. Motion for Leave to File Additional Affidavits

- 6 -

Respondents filed a Motion for Leave to File Additional Affidavits of Brian Chase and Gloria Roberts. (Doc. 13.) Venus does not object. (Doc. 18.) However, the affidavits relate to the issue of contempt, and because the motion for contempt is transferred, the Court denies the motion as moot.

**IT IS ORDERED** that Venus' motion to transfer, (Doc. 1), is **GRANTED**, and Respondents' motion for leave to file additional affidavits, (Doc. 13), is **DENIED**. The motion is hereby **TRANSFERRED** to the Northern District of Georgia. The Clerk shall terminate this action.

Dated this 13th day of January, 2016.

Douglas L. Rayes
United States District Judge